UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ELISHA HILL,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

Civil Action No. 14-13029
Honorable Nancy G. Edmunds
Magistrate Judge Elizabeth A. Stafford

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 12, 15]

**I.    INTRODUCTION**

Plaintiff Elisha Hill appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [R. 12, 15], which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that substantial evidence supports the Commissioner's final decision. For these reasons, the Court **RECOMMENDS** that the Commissioner's motion [R. 15] be **GRANTED**,

Hill's motion [R. 12] be **DENIED**, and the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

### A. Hill's Background and Claimed Disabilities

At the time of the administrative hearing, Hill was a 60-year-old high school graduate who previously worked as a general factory laborer, a truck driver, and a patient monitor[1], among other jobs. He alleges disability based on "left tennis elbow, neck pain, anxiety, depression, stress, and forgetfulness." [R. 9-2, Tr. 14]. According to Hill, he injured his back doing construction in the 1980s and injured his elbow while exiting a truck in 2008. [*Id.*, Tr. 49-50, 83]. He claims he has trouble lifting more than 10 or 15 pounds and that it is hard for him to hold onto things. [*Id.*, Tr. 83-84, 92]. Hill admits Naproxen takes the pain away, but says it makes him drowsy and causes him to take multiple naps each day. [*Id.*, Tr. 83, 85-86, 89, 92]. He argues that he cannot return to work due to the effect of his medication, and says the inability to support himself financially causes his stress, anxiety, and depression. [*Id.*, Tr. 84, 89-90].

---

[1] As a patient monitor, Hill was responsible for supervising patients at a halfway house to make sure they did not leave during the night or possess any contraband. [R. 9-2, Tr. 48].

**B.     Procedural History**

*1.     Previous Applications*

Hill previously filed applications for DIB and SSI on September 21, 2010, alleging disability based solely on physical impairments – including pain in his left shoulder, elbow and leg, and tingling in his lower extremities – as of April 25, 2008. [R. 9-3, Tr. 98]. After a hearing, an administrative law judge ("ALJ") found that Hill was capable of performing past relevant work ("PRW") as a patient monitor; and that he was therefore not disabled. [*Id.*, Tr. 100-01, 103-04]. This finding was supported by the hearing testimony of a vocational expert ("VE"), who testified that the work of a patient monitor is unskilled work performed at a sedentary exertional level. [*Id.*, Tr. 103; R. 9-2, Tr. 72-76].

*2.     Current Applications*

On February 9, 2012, Hill filed the current applications for DIB and SSI, alleging disability as of December 1, 2011. [R. 9-5, Tr. 191-203]. The claims were denied initially on May 9, 2012, and Hill filed a timely request for an administrative hearing. [R. 9-4, Tr. 144-64]. Hill and a VE testified at a March 12, 2013 hearing before an ALJ. [R. 9-2, Tr. 79-94]. In a May 7, 2013 written decision, the ALJ found Hill not disabled. [*Id.*, Tr. 7-23]. On June 11, 2014, the Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner for purposes of this review. [*Id.*, Tr. 1-5]. Hill filed for judicial review of the final decision on August 4, 2014. [R. 1].

### C. The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

4

impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's RFC, and will find the claimant not disabled if he or she can still do PRW. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    Following the five-step sequential process, the ALJ concluded that Hill was not disabled. At step one, he found that Hill had not engaged in substantial gainful activity since his alleged onset date. [R. 9-2, Tr. 13]. At step two, he concluded that Hill had two severe impairments: depression and panic disorder. [*Id.*]. At step three, the ALJ compared Hill's severe impairments to Listings 12.04 and 12.06 and determined that neither of his severe impairments met or medically equaled any listing. [*Id.*]. In making this comparison, he found that Hill's mental impairments resulted in mild restrictions in activities of daily living and in maintaining social functioning; moderate difficulties with concentration, persistence or pace ("CPP"); and

5

no extended episodes of decompensation.  [*Id.*].

Between steps three and four, the ALJ assessed Hill's RFC, finding him capable of performing unskilled work[4] at all exertional levels.  [R. 9-2, Tr. 14].  He explained that Hill was capable of unskilled work "at most," as he can "understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting."  [*Id.*, Tr. 18].

At step four, the ALJ determined that Hill could perform PRW as a patient monitor as it is generally performed in the national economy based on the mental demands of that work and his RFC.  [R. 9-2, Tr. 18-19]. Although this decision would have been sufficient to find Hill not disabled, the ALJ continued to step five, finding alternatively that Hill acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.  [*Id.*].  As a result, the ALJ found Hill not disabled.

---

[4] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4.

## III. ANALYSIS

### A. Standard of Review

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among

these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

### B. The ALJ's RFC Assessment is Supported by Substantial Evidence

Hill argues that the ALJ's RFC determination does not accurately portray his physical and mental impairments and non-exertional limitations because it ignores his severe memory deficits, shoulder impairment, severe pain and adverse side effects to his medication. He also argues that the ALJ failed to discuss the weight he gave the treating and non-treating providers. The Court disagrees.

In formulating the RFC assessment, the ALJ found that the evidence in the record – including the objective medical evidence, Hill's daily activities and the way he presented at the field office interview – contradicts a finding that Hill's mental impairments caused significant limitations. [R. 9-2, Tr. 17-18]. The ALJ accurately cited to medical evidence from Hill's treating psychological providers showing that mental health treatment had

8

been generally successful in improving and controlling his symptoms. [*Id.*, Tr. 16]. Hill reported on multiple occasions that his medications improved his symptoms; never complained of any medication side effects; and stated that the treatment was "having positive impact" and was "excellent – helping me a lot." [*Id.*, Tr. 17-18; R. 9-7, Tr. 273-74, 279, 283-85, 287-88, 290-92]. The ALJ also noted that, despite Hill's allegations of totally disabling symptoms, his treating providers never recommended any restrictions, and they consistently observed that Hill presented with clear thought and understanding, sound judgment and logical and coherent thought process. [*Id.*].

In his function report, Hill reported that he is able to perform daily household tasks, including cooking, making his bed, doing laundry, and maintaining his financial affairs; that he watches television and reads the bible every day, and typically goes outside three to four times during the day; that he is able to drive, take public transportation, and walk for thirty minutes before taking a break; that he grocery shops several times per month for approximately two hours; and that he visits his family three to four times per month. [R. 9-6, Tr. 242-45, 248, 250-52]. The ALJ found that the daily activities Hill reports are not as limited as one would expect based on his complaints of disabling symptoms and limitations. [R. 9-2, Tr.

9

18].

Furthermore, the ALJ discussed Hill's February 2012 field office report, holding that it is inconsistent with his allegation of total disability. [*Id.*]. In the report, the examiner noted that Hill was coherent, that he had no difficulty reading, writing, understanding, concentrating or answering during the interview, and that there were no physical or mental limitations noticeable. [R. 9-6, Tr. 213-14].

The ALJ gave no weight to the report of the consulting psychological examiners, finding that the evidence Hill provided them conflicted with evidence he gave his treating providers. [R. 9-2, Tr.17]. Specifically, the ALJ pointed out that Hill told the consulting examiners that his mental health treatment had not improved his symptoms, where the evidence shows he told his treating providers several different times that the treatment was helping a lot. Further, the consulting examiners observed that Hill walked at a slow pace with the support of a cane, and they did not believe that he was exaggerating his symptoms. [R. 9-7, Tr. 297]. However, the ALJ correctly cited other medical evidence establishing that Hill did not need a cane to ambulate, and Hill fails to present any evidence to the contrary. [R. 9-2, Tr.17]. The ALJ also highlighted the fact that although Hill previously reported he had been in remission for drug and

alcohol abuse for 20 years, he told the consulting examiners that he occasionally used marijuana and drank alcohol.  [*Id.*].

Hill argues that the ALJ failed to consider his shoulder impairment and that substantial evidence does not support the finding that he is capable of work at all exertional levels.  The Court disagrees.  In making this determination, the ALJ relied on medical reports from Hill's treating providers and the report of consulting examiner Katherine Karo, D.O.

During treatment with Dr. Ernest Mullen in September 2011, Hill denied pain, fatigue, swelling of extremities and numbness or tingling of his extremities.  [R. 9-7, Tr. 329].  Moreover, from that date until June 2012, Hill did not receive any treatment for physical complaints.  The ALJ properly considered this fact when assessing the intensity and persistence of Hill's symptoms, as well when determining the extent to which the symptoms caused physical limitations, if at all.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009) (a reasonable mind could find that lack of treatment over a period of time indicated an alleviation of symptoms)[5].  The ALJ also raised the fact that Hill's treatment consisted solely of exercises

---

[5] An ALJ must consider any explanation a claimant has for lack of treatment.  *See* SSR 96-7p, 1996 WL 374186, at *7.  Although Hill mentions that he did not have medical insurance, he does not argue that anything, including inability to pay, prevented him from receiving treatment. [R. 12, PgID 412].  Notably, Hill was receiving treatment for his mental impairments during the same time period.  [R. 9-7, Tr. 271-95].

11

and Naproxen, and that Hill reported that his pain improved with Naproxen. [R. 9-2, Tr. 15; R. 9-7, Tr. 344-45, 347]. This modest treatment supports the ALJ's finding of no disability. *Myatt v. Comm'r of Soc. Sec.*, 251 Fed. Appx. 332, 335 (6th Cir. 2007) (modest treatment regimen is inconsistent with diagnosis of total disability).

Furthermore, the results of Dr. Karo's physical examination demonstrate that Hill had little to no physical limitations, as the ALJ found. [R. 9-7, Tr. 301-07]. Dr. Karo found that Hill was able to heel walk, toe walk, and tandem walk; sit and stand without assistance; bend, stoop, carry, push, and pull; ambulate without the use of an assistive device; squat in full without pain; and bear weight on the left, right, and bilaterally without pain. [*Id.*, Tr. 303-05]. She noted that Hill's muscle tone was normal in all extremities, his generalized muscle strength was 5/5, he had no significant muscle atrophy, his straight leg raise was negative, and he had normal range of motion of his shoulders, elbows, wrists, hands, lumbar spine, hips, knees, ankles, and feet. [*Id.*, Tr. 302-03, 306-07]. Based on the examination, Dr. Karo opined that there is "no physical limitation of sitting, standing and walking." [*Id.*, Tr. 303]. Noting that the consultative examiner's report was very thorough, the ALJ gave this objective medical evidence great weight; this was reasonable and well-supported. [R. 9-2,

Tr. 15].

The Court finds that substantial evidence supports the ALJ's determination that Hill had no exertional limitations.[6]

### C. Hill's Moderate CPP Difficulties

Hill argues that the ALJ committed reversible error by failing to include CPP-specific limitations (e.g., no fast-paced production work) in the RFC after finding at step three that he had "moderate" CPP[7] difficulties. This common argument has resulted in inconsistent holdings among the reviewing courts, so ALJs have been urged to explain their reasoning. *Southworth v. Comm'r of Soc. Sec.*, No. 12-12243, 2013 WL 3388946, at *16 (E.D. Mich. July 8, 2013) (collecting cases).

In this case, the ALJ explained at the end of his step-three analysis that the limitations in the "paragraph B" criteria (including the moderate CPP finding) were not a RFC assessment, but are instead used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. [R. 9-2, Tr. 13-14]. He then noted that his RFC incorporated his assessment of Hill's mental function. [*Id*]. In *Southworth*,

---

[6] Even if Hill has exertional limitations, he fails to show that they would preclude him from performing his PRW as a patient monitor.
[7] CPP refers to a person's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C)(3).

13

the Court found that the same language the ALJ used here meant that the ALJ believed his "moderate" CPP rating was fully accounted for by the limitations in his RFC assessment. See Southworth, 2013 WL 3388946, at *15-17. Therefore, the Court's review narrows to whether substantial evidence supports the ALJ's belief that, despite his moderate difficulties in CPP, Hill could perform unskilled work on a sustained basis. See id.

As discussed above, the ALJ held that the record evidence failed to establish that Hill's mental impairments caused significant limitations. [R. 9-2, Tr. 17-18]. The ALJ found that Hill was capable of unskilled work because he can "understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting." [Id., Tr. 18]. The finding of state agency consultant Zahra Yousuf, M.D., that Hill retained the mental capacity to perform simple unskilled tasks supports the ALJ's determination. [R. 9-3, Tr. 131-32, 139]. Thus, substantial evidence supports the ALJ's RFC assessment.

### D. The ALJ's Credibility Determination is Supported by Substantial Evidence

The ALJ found that Hill's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible.

14

[R. 9-2, Tr. 14]. Hill argues that this finding is not supported by substantial evidence.

An ALJ may weigh credibility and is not required to accept a claimant's subjective complaints. See *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) (citing *Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). Discounting a claimant's credibility is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence in the record. See *Bradley v. Sec'y of Health and Human Servs.,* 862 F.2d 1224, 1227 (6th Cir. 1988). When supported by substantial evidence, the court must accord an ALJ's credibility finding "great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.,* 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle.").

An ALJ's credibility assessment proceeds in two steps, as outlined by 20 C.F.R. § 404.1529. First, the ALJ must determine whether the claimant has a medically determinable physical or mental impairment. *Id.,* § 404.1529(a)-(b). Statements about symptoms alone do not establish

15

impairment; objective medical evidence is required. *Id.* Second, if a medically determinable impairment is established, the intensity and persistence of a claimant's symptoms must be evaluated based on all available evidence, including objectively verifiable medical evidence, medical observations, and the applicant's self-reported experience. *Id.* The ALJ should consider daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; treatment; measures used for pain relief; and other factors concerning functional limitation. *Id.*, § 404.1529(c)(iii). A claimant's statements will not be disregarded solely because they are unsubstantiated by objective medical evidence; nevertheless, statements may be rejected to the extent that they are inconsistent with the rest of the evidence available. *Id.* § 404.1529(a).

      The ALJ complied with this two-step process in assessing Hill's credibility, and his credibility determinations are supported by substantial evidence. In discounting Hill's credibility, the ALJ cited to specific, record-based examples that undermine Hill's allegations regarding the intensity, persistence and limiting effects of his symptoms. For example, the ALJ relied on Hill's statements to his treating providers that the medication improved his symptoms, the treatment was helping a lot, and that he had no pain [R. 9-7, Tr. 273-74, 279, 283-85, 287-88, 290-92, 329]; relied on

16

Hill's lack of treatment from November 2011 to June 2012, the fact that he never complained of any medication side effects, and the fact that his providers never recommended any restrictions [*id.*]; relied on the findings of the physical consultative examination [*id.*, Tr. 301-07]; relied on Hill's daily activities and the report from the field office report regarding his ability to function [R. 9-6, Tr. 213-14, 242-44, 248, 250-52]; and relied on the fact that Hill provided evidence to the consulting psychological examiners that conflicted with evidence he gave to his treating providers and with other evidence in the record. [R. 9-2; Tr. 14-18]. The ALJ's credibility findings are supported by substantial evidence.

### E. The ALJ's Determination that Hill is Capable of Performing PRW of a Patient Monitor is Supported by Substantial Evidence

In making a step-four determination that a claimant can return to PRW, an ALJ must compare the claimant's RFC with the physical and mental demands of the past work, and determine whether he or she is capable of returning to that work. SSR 82–62, 1982 WL 31386, at *4. The ALJ complied with these requirements, and found that Hill was capable of PRW as a patient monitor. [R. 9-2, Tr. 18-19]. Hill argues that he was denied due process because the ALJ relied upon a definition of patient monitor that was given by the VE in the prior claim, denying his

17

representative the opportunity to cross-examine the VE during the March 2013 hearing. He further argues that a subsequent search of the Dictionary of Occupational Titles ("DOT") for the job of patient monitor does not produce any results.

However, the ALJ was not required to solicit testimony from a VE in order to determine that Hill was capable of performing his past work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010). So, due process did not require the VE to testify at the March 2013 hearing. Further, the VE's testimony did not have to be consistent with the DOT in order for the ALJ to consider it. *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). Finally, even if the job of patient monitor no longer existed, that fact is irrelevant. See *Barnhart v. Thomas*, 540 U.S. 20, 22-30 (2003) (holding that, where a claimant retained the RFC to perform her past work as an elevator operator, it was irrelevant that the job no longer existed in significant numbers in the national economy). Thus, Hills' challenges to the ALJ's finding that he was capable of PRW are without merit.

## IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Hill's Motion for Summary Judgment [R. 12] be **DENIED**, the Commissioner's

Motion [R. 15] be **GRANTED**, and this case be **AFFIRMED**.

                                              s/Elizabeth A. Stafford
                                              ELIZABETH A. STAFFORD
                                              United States Magistrate Judge

Dated: June 9, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 9, 2015.

                s/Marlena Williams
                MARLENA WILLIAMS
                Case Manager